IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CHARLES S. BURGE, IV, | ) Case No. 3:20-cv-2260 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER**[1] |
| Defendant. | ) |

Plaintiff, Charles S. Burge, IV, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Burge challenges the Administrative Law Judge's ("ALJ") negative findings, contending that the ALJ erred in (1) determining that his cellulitis was not a severe or medically determinable ("MDI") impairment; and (2) determining he could perform his past relevant work. Because the ALJ applied the proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Burge's application for DIB must be affirmed.

**I.      Procedural History**

On February 28, 2018, Burge applied for DIB. (Tr. 298-299).[2] Burge alleged that he became disabled on January 1, 2014, due to depression, anxiety, chronic obstructive pulmonary

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 8.
[2] The administrative transcript appears in ECF Doc. 15.

disease ("COPD"), type 2 diabetes, hypertension, cellulitis of the legs, and sleep apnea. (Tr. 315, 319). The Social Security Administration ("SSA") denied Burge's application initially and upon reconsideration. (Tr. 193-208, 210-221). He requested an administrative hearing. (Tr. 231-232).

ALJ Patricia Carey held a hearing on August 27, 2019 and denied the claim in an October 30, 2019 decision. (Tr. 10-19, 160-192). At Step Four of the sequential evaluation process, the ALJ found that Burge had the residual functional capacity ("RFC") to perform light work, except that:

> [Burge] can frequently climb ramps and stairs, and occasionally climbs ladders, ropes and scaffolds. [Burge] can frequently stoop, kneel, crouch, and crawl. [Burge] can never work around hazards, such as unprotected heights or moving dangerous mechanical parts, he can occasionally operate a motor vehicle, and in conditions of extreme heat or cold, and in conditions where vibrations are present. [Burge] must avoid concentrated exposure to fumes, odors, dusts, gases, and other pulmonary irritants.

(Tr. 14-15). Based on the RFC finding and an independent review of the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Burge could perform his past work as a demolition company owner. (Tr. 18). Accordingly, the ALJ determined that Burge wasn't disabled and denied his application. *Id*. On October 7, 2020, Burge filed a complaint seeking judicial review. ECF Doc. 1.

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Burge was born on July 22, 1961 and was 52 years old on the alleged onset date. (Tr. 315). Burge graduated from high school in 1980 and did not have any specialized training. (Tr. 320). He previously worked as the managing partner at a demolition company. *Id*.

B. **Relevant Medical Evidence**

Burge limited his challenge to the ALJ's Step Two assessment of his MDIs, specifically his cellulitis; thus, it is only necessary to summarize the evidence related to that condition. *See generally* ECF Doc. 16.

As background, in 1993 and 2007, Burge sought treatment for cellulitis related to leg injuries. (Tr. 642-643, 646).

On January 3, April 8, and November 18, 2013, Burge saw Rex Figy, M.D. (Tr. 702-710). During his first two visits, Dr. Figy noted that Burge did not have any edema on his legs. (Tr. 707, 710). But on his last visit, Burge had swelling on his right lower leg and sores, which Dr. Figy identified as edema. (Tr. 702, 704).

On January 23, 2014, Burge was seen by an orthopedist, who noted that he had no tenderness or swelling in his calves. (Tr. 450).

On September 6, 2014, Burge was seen at St. Vincent Mercy Medical Center. (Tr. 423). It was noted that he had cellulitis of his right lower leg, and testing indicated he had a staph infection. (Tr. 423, 426). He was also noted as having a sepsis infection affecting his skin and was provided medication. (Tr. 423).

On September 16, 2014, Burge saw Dr. Figy for a follow-up appointment about his cellulitis. (Tr. 699). Dr. Figy noted that Burge was keeping the area covered. *Id.* On physical examination, Dr. Figy found that Burge's right leg was swollen and erythematous. (Tr. 700). He assessed Burge with cellulitis and an abscess. *Id.*

On October 9, 2014, Burge met with Luis Jauregui, MD, an infectious disease consultant, about his cellulitis. (Tr. 444). Dr. Jauregui noted that he had seen Burge at the medical center and described his cellulitis then as appearing "streptococcal in nature" and being accompanied

by "a severe degree of edema secondary to impaired venous and lymphatic return secondary to prior leg trauma and scar tissue formation." *Id.* He noted that, as a consequence of the cellulitis, Burge had a lot of red cell extravasation from his capillaries with associate discoloration and edema. *Id.* Currently, Burge reported that he was "doing much better moving around," and he did not experience as much pain or discomfort, although some discoloration persisted. *Id.* Dr. Jauregui noted that a small blister of fluid was forming on the upper portion of his tibia but there was no apparent active infection. *Id.* Burge also reported that his leg had been more swollen for the past few days and he felt the fluid was trying to come through the blister. *Id.* On physical examination, Dr. Jauregui noted that Burge had lymphedema on both his lower extremities, particularly on his right. (Tr. 445). Dr. Jauregui stressed the importance of controlling the edema and recommended additional support stocking and using a bandage wrap during the day. (Tr. 446). They also discussed Burge possibly going on a long-term antibiotic treatment were the cellulitis to recur frequently. *Id.*

On October 21, 2014, Burge had a follow-up appointment with Dr. Figy. (Tr. 696). Dr. Figy noted that his leg had "healed up nicely, still ha[s] some edema but improv[ed] during [the] night." *Id.* On physical examination, Dr. Figy noted a slight edema on his right leg. (Tr. 697). Dr. Figy did not, however, assess that Burge still had cellulitis. *Id.*

From December 30, 2014, to October 18, 2016, Burge was seen by a doctor at Endocrine and Diabetic Care Center about once a year; although the medical records note that Burge had trace edema on both of his legs there was no mention of his cellulitis returning. (Tr. 536-543, 546-548). Similarly, from March 9, 2015 to January 26, 2017, Burge was treated by Rex Figy, MD, who did not report any new cellulitis infections and consistently observed that Burge did not have any edema. (Tr. 668-695).

On November 4, 2017, Burge went to a hospital for treatment of a hand laceration. (Tr. 903-906). The remainder of Burge's records do not directly reference his cellulitis, save as part of his medical history.

**C.     Relevant Opinion Evidence**

**1.     Function Report – Charles Burge**

On March 28, 2018, Burge completed a function report. (Tr. 335-342). Because of his conditions, he stated that he was depressed and could not sit or stand for long periods, walk far without getting winded, or sleep more than four hours at a time. (Tr. 335). His typical day consisted of taking his pain medication, lying in bed watching TV "until [he] can function," then getting coffee, letting his dog out, and using his computer or going back to bed. (Tr. 336). He would let the dog in and out, but his wife otherwise cared for the dog. *Id.* He explained that his conditions specifically affected his ability to sleep by causing his trouble breathing, falling asleep, staying asleep, and getting out of bed in the morning. *Id.* As to his personal care, he explained that his wife helped him with his socks and shoes, and he used a stool when showering because he felt unsafe to stand. *Id.* He did not need reminders to care for himself, but his wife kept a list on the fridge. (Tr. 337). He would prepare meals, such as sandwiches and leftovers, but he did not do any household chores or yard work. (Tr. 337-338).

Burge explained that he only left his home when necessary to attend a medical appointment and he could drive and ride in a car but only drove when necessary. (Tr. 338). He was also capable of going out alone. *Id.* His wife handled their shopping and, although he was capable, she also handled the finances. *Id.* His hobbies including watching TV and playing on his computer, which he did often and for as long as he could sit. (Tr. 339). He would spend time with others, including the holidays, and would have dinner with friends once or twice a month

5

but he did not go out with friends like he used to. (Tr. 339-340). He did not go anywhere on a regular basis except his medical appointments, which he remembered but needed to be accompanied to because his diabetes affected his driving. (Tr. 339). His conditions also affected his ability to lift, squat, stand, walk, sit, kneel, climb stairs, see, remember things, complete tasks, and concentrate. (Tr. 340). He could lift between 5 and 10 pounds, stand 10 minutes, walk 100 feet, and sit 30 minutes to 1 hour. *Id.* Burge testified that he could also follow instructions, and get along with authority figures, but he did not handle stress well and now had anxiety and nightmares. (Tr. 340-341).

### 2. State Agency Consultants

On July 2, 2018, David Knierim, MD, evaluated Burge's physical limitations based on the medical records. (Tr. 203-205). He found that Burge could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour day; sit for 6 hours in an 8-hour day; push and/or pull the same as he was limited for lifting and/or carrying. (Tr. 203-204). Additionally, he found postural limitations which restricted Burge to: frequently climb ramps/stairs; occasionally climb ladders, ropes, or scaffolds; frequently stoop; frequently kneel; frequently crouch; and frequently crawl. (Tr. 204). Lastly, Dr. Knierim found that Burge should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 205). On reconsideration, it was asserted that there was "insufficient evidence to evaluate the claim." (Tr. 219).

### D. Relevant Testimonial Evidence

### 1. Charles Burge

Burge testified at the hearing. (Tr. 166-184). He expressed that he had been instructed to lose weight and had trouble going up and down stairs because he would become out of breath

and his right leg hurt after one flight. (Tr. 166-167). He lived with his wife in a house. *Id.* Although he had a valid driver's license and could drive, his wife usually drove because he could become nervous and upset. (Tr. 169-170). He was able to care for his own personal hygiene. (Tr. 170). In his prior work in demolition, he would have to lift upwards of 50 pounds and likely split his day between sitting and standing. (Tr. 170-171). He stated that he did not operate much of the equipment but did "more of the estimating and supervising." (Tr. 171). He explained that he stopped working because "[he] couldn't perform like [he] used to," stating that "[he] couldn't get out of bed. It just, [his] aches and pains and just wasn't, everything just started slowly deteriorating." (Tr. 171-172).

> Burge explained that he believed he could not work because:
>
> My legs even back at that time if I stood for more than 15-20 minutes would start swelling and hurting. And I still get short of breath where I couldn't, you know, move like I did when I when I was [in] my 40s I guess. . . . That's about the same time the depression started coming in. I was, I was fairly successful in my work and then when I wasn't able to perform like I used to perform I got severely depressed and that got worse over time. I just, like I say, everything just kind of bottled up together. My legs don't work right, my mind didn't work right.

(Tr. 174-175). His pain decreased when he would lie down with his legs elevated. (Tr. 175). He believed he could walk for about 20 to 30 minutes before he needed to rest for about 15 minutes due to his shortness of breath. (Tr. 176). His days consisted mostly of driving and he would do some household chores, such as vacuuming, washing dishes, or grocery shopping. (Tr. 176-177). He also had taken care of his bull mastiff. (Tr. 177).

Burge described how in 2016 he had attempted to return to work but operating a skid loader irritated his leg and caused it to swell. (Tr. 180). His legs also swelled up from walking. *Id.* The swelling and pain started with an accident in 1992, then he had a second accident in 2000, and was hospitalized for the pain and swelling in his legs in 2014. *Id.* Since 2000, his legs

7

had been "bad." *Id.* He believed his struggles with getting out of bed in the morning was more from his anxiety than pain. (Tr. 181).

### 2. Vocational Expert

The vocational expert ("VE") testified at the hearing. (Tr. 184-190). He testified that Burge's past relevant work would correlate to a "production supervisor," which had a light exertional level, but "there may have been moments when it was performed [at] medium." level. (Tr. 184-185). The VE testified that a hypothetical individual of Burge's age, education, and relevant work background, with the ALJ's proposed limitations would not be able to perform Burge's past work as actually performed *or* as generally performed in the national economy. (Tr. 186-187). However, such an individual could perform light work in such representative occupations as a route aid, mail clerk, or as a marker or marking machine tender. *Id.*

## III. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

      **B.**      **Step Two: Medically Determinable Impairment**

Burge contends that the ALJ misevaluated his MDIs by failing to find that his cellulitis was a severe impairment. ECF Doc. 16 at 11. He argues that the ALJ failed to discuss the medical evidence of his cellulitis or his testimony regarding its severity. ECF Doc. 16 at 11-12. This failure, he asserts, undermined the ALJ's RFC determination that he could perform his past work because his cellulitis limits his ability to walk and stand and requires him to elevate his legs. ECF Doc. 16 at 12-15.[3] He adds that the ALJ's RFC was not supported by substantial evidence as the ALJ rejected the VE's testimony, which was contrary to the ALJ's findings. ECF Doc. 16 at 12-13, 15. The Commissioner disagrees. ECF Doc. 18 at 9-12.

---

[3] Burge raises his challenge to the RFC as an independent ground but, because it is in part premised on the ALJ's misevaluation of his cellulitis, that portion of his argument is better construed as an alleged harm from the Step Two error.

At Step Two, a claimant has the burden to show that he has *at least one* "medically determinable impairment" that is a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Under the regulations, an impairment must have lasted or be expected to last "for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. An MDI is one that results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory findings. *See* 20 C.F.R. § 404.1521. A claimant's statement of symptoms, a diagnosis, or medical opinion will not be used to establish an MDI. *Id.* Whether a condition qualifies as an MDI is determined exclusively on the basis of objective medical evidence. *Id.* If the ALJ concludes that a condition is not an MDI, the ALJ need not consider the condition in determining the RFC. *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-cv-0223, 2017 U.S. Dist. LEXIS 6172, at *11 (S.D. Ohio Jan. 17, 2017).

The determination of a severe impairment is a threshold inquiry "intended to 'screen out totally groundless claims.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). If the claimant doesn't show she has *at least one* "severe" impairment, she's categorically *not* disabled. 20 C.F.R. § 404.1520(c). If he does satisfy this minimal burden, the ALJ has to consider *all of his impairments* (even ones that aren't "severe") at the remaining steps in the sequential evaluation. *Nejat*, 359 F. App'x at 577 (quoting SSR 96-8p, 1996 SSR LEXIS 5 (Jul. 2, 1996)). And, so long as the ALJ considers all the claimant's impairments in the other steps, any Step Two error is harmless. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The ALJ applied the proper legal standards and reached a decision supported by substantial evidence in determining that Burge's cellulitis was not an MDI. 42 U.S.C. § 405(g);

*Rogers*, 486 F.3d at 241. Burge relies on his own symptom complaints, a 2014 hospitalization and related treatment by Dr. Jauregui, and a November 2017 hospitalization to support his assertion that his cellulitis was a severe impairment. *See* ECF Doc. 16 at 11-12. But only those forms of "objective medical evidence" from Burge's 2014 hospitalization provide any meaningful evidence when answering the preliminary question of whether his cellulitis was an MDI. Burge's reliance on his subjective symptoms complaints is misplaced because those cannot be the basis for an MDI finding and, importantly, Burge's own function report and hearing testimony never explicitly referenced cellulitis as the cause of his symptoms or limitations. *See* 20 C.F.R. § 404.1521; (Tr. 166-184, 335-342). Burge's November 2017 hospitalization also provides little light to his condition, because it occurred after his date last insured and, thus, does not provide proof that he was disabled *before* that date. *See Gibson v. Sec'y*, 678 F.2d 653, 654 (6th Cir. 1982) (A claimant must establish "the onset of disability prior to the expiration of [his] insured status."). Further, Burge has not cited any medical record for his November 2017 hospitalization. And although a review of the evidence submitted indicates a November 2017 hospitalization, it appears that Burge was only treated for a hand laceration. *See* ECF Doc. 16 at 6-7, 11; (Tr. 903). Thus, the Court is left with Burge's 2014 hospitalization and related treatment by Dr. Jauregui.

This isolated incident, even assuming it covered the entire period from Burge's hospitalization (September 6, 2014) to Dr. Figy's finding that the cellulitis had "healed up nicely" (October 21, 2014) fails to meet the durational requirement to constitute an impairment. *See* 20 C.F.R. § 404.1509. Nor does the record indicate that Burge's condition was recurrent in such a manner that continuous treatment could be construed. Although he appeared to regularly struggle with edema, only the treatment notes from his 2014 hospitalization connected the edema

11

to the cellulitis.  Consequently, in keeping with Step Two's role to "screen out" groundless claims, the ALJ properly did not consider the singular hospitalization as an MDI.  *Nejat*, 359 F. App'x at 576.  Further, the absence of relevant evidence in the medical record demonstrated the necessary substantial evidence support for the ALJ's determination, which was consistent with the sporadic and isolated treatment Burge received.  *Biestek*, 139 S. Ct. at 1154.

      C.      **Step Four: Residual Functional Capacity**

Burge contends that the ALJ's rejection of the VE's testimony due to her determination that the RFC was less restrictive was in error.  ECF Doc. 16 at 12-13, 15.  He argues that there was no testimony by the VE to that effect during the hearing and, the absence of such testimony resulted in the ALJ's determination that he could perform his past relevant work being supported only by the ALJ's lay opinion.  ECF Doc. 16 at 15.  This opinion alone, he argues, does not constitute substantial evidence.  ECF Doc. 16 at 15.

The Commissioner responds that the ALJ did not legally err in rejecting the VE's testimony and that her determination that Burge could perform his past relevant work was supported by substantial evidence.  ECF Doc. 18 at 13-15.  The Commissioner points to the consistency between the ALJ's determination and the state agency physician consultant's findings, the ALJ's independent finding of more favorable environmental limitations, and the record's lack of support for more restrictive findings due to his cellulitis.  ECF Doc. 18 at 13-14.  Further, the Commissioner asserts that the use of VE testimony is permissive and that the VE's prior disclosure regarding Burge's past relevant work was consistent with the ALJ's finding.  ECF Doc. 18 at 14-15.

At Step Four, the claimant has the burden to establish that he is unable to perform his past relevant work in light of his RFC.  20 C.F.R. § 404.1520(a)(4)(iv); *see also Wright-Hines v.*

*Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (explaining that a claimant challenging a finding that he was able to perform past relevant work had "fail[ed] to provide [the court] with the factual record [the court] need[ed] to find in [his] favor").  In evaluating whether a claimant is able to perform his past relevant work, an ALJ: (1) will ask the claimant for information about the past work (duties, requirements, etc.); and (2) may consult other sources, such as VE testimony or the DOT.  20 C.F.R. § 404.1560(b); *see also* SSR 00-4p, 2000 SSR LEXIS 8, at *4 (Dec. 4, 2000) ("We may also use VEs and VSs at these steps to resolve complex vocational issues.").

The ALJ did not err by rejecting the VE's testimony and reached a determination supported by substantial evidence in finding that Burge could perform his past relevant work. *Biestek*, 139 S. Ct. at 1154.  Burge's contentions appear to rest on two of the ALJ's determinations: (i) her less restrictive RFC finding than the hypothetical posed to the VE, and (ii) her rejection of the VE's testimony.

As to the latter, Burge's argument rests on the premise that the ALJ's own research into the DOT and related guideline cannot itself be substantial evidence and the VE's testimony must play a role.  This proposition is incorrect.  The ALJ's reliance and use of a VE is entirely permissive.  *See Wright-Hines*, 597 F.3d at 395 (affirming an ALJ decision where the VE never testified, was never asked a hypothetical question, and only provided a written report) ("We *may* use the services of vocational experts . . . to help us determine whether you can do you past relevant work[.]") (alterations in original) (citing 20 C.F.R. § 404.1560(b)(2)).  Moreover, the ALJ's independent review of the DOT provides a sufficient basis in-and-of itself for the ALJ to compare to the claimant's RFC and determine whether they could before that position.  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 16-CV-11294, 2017 U.S. Dist. LEXIS 149625, *3-4

(E.D. Mich. Sept. 14, 2017) (finding that the ALJ's inclusion of additional environmental and exertional limitations beyond the VE's testimony was harmless error because the DOT's description of a job "provides an independent basis for the ALJ to conclude that plaintiff could perform that job within his RFC.").

Because the VE's testimony is not a requirement under the regulations, it would be inconsistent to have the ALJ bound to adopt any RFC proposed in the hypothetical to the VE. *See Wright-Hines*, 597 F.3d at 395 (An ALJ is "not required to solicit testimony from a VE in reaching [her] [Step Four] conclusion"); *see also Bondy v. Comm's of Soc. Sec.*, No. 13-14537, 2015 U.S. Dist. LEXIS 42835, *41-42 (E.D. Mich. Feb. 4, 2015) (rejecting the plaintiff's argument that the ALJ inadequately questioned the VE regarding the past relevant work because "the ALJ is not required to use the VE in making the Step Four finding") (internal quotation marks omitted).

Errors can arise when the ALJ adopts all or portions of the VE's testimony but then has inconsistent RFC limitations with those adopted portions. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241-43 (6th Cir. 2002) (remanding an ALJ's decision where the hypothetical posited to the VE did not accurately reflect the claimant's limitations because the ALJ mistakenly omitted some limitations when formulating the hypothetical); *Cooley v. Sec's of Health & Human Servs.*, 875 F.2d 862, 1989 U.S. App. LEXIS 4839, *7-11 (6th Cir. 1989) (same). However, in some circumstances the error can also be harmless because the ALJ's RFC is the same or less restrictive than the VE's testimony, resulting in the VE's findings as to work in the national economy being based on harsher restrictions than the ALJ found necessary. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 844-845 (6th Cir. 2005) (holding that any error arising from the ALJ's reliance on the VE's testimony, despite her less restrictive RFC than the

14

hypothetical posed to the VE, was harmless because the hypothetical was more restrictive). Here, however, because the ALJ was not obligated to use the VE, her determination that a less restrictive RFC was necessary was not a *per se* error and, her subsequent rejection of the VE's entire testimony – without any partial adoption – would not have implicated the errors seen elsewhere.

Moreover, the ALJ explained that her review of the comparable DOT entry for Burge's past work led her to disagree with the VE's assessment that Burge had performed that work at a medium exertional level. (Tr. 18). This provided the necessary justification and permitted the court to meaningfully review her decision. But we are not obligated to review the ALJ's judgment in making that comparison because Burge has failed to properly develop the argument both by fully developing it, but also by essentially urging the court to reweigh the evidence, which this court is not permitted to undertake. *See Jones*, 336 F.3d at 476; *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (distinguishing waiver and forfeiture by noting that forfeiture can be the failure to present an argument before the district court).

Accordingly, the ALJ did not err by rejecting the VE's testimony as to Burge's past relevant work, and the ALJ's determination must be affirmed.

IV. **Conclusion**

Because the ALJ harmlessly erred in applying the proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Burge's application for DIB is affirmed.

**IT IS SO ORDERED.**

Dated: March 15, 2022

Thomas M. Parker
United States Magistrate Judge